# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JENNIFER LEACH-MORIN,

     *Plaintiff*,

*v.*                                CASE NO. 10-CV-14444

COMMISSIONER OF              DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 15, 16.)

Plaintiff was 48 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 12, 102.) Plaintiff's employment history includes work as a medical records clerk from 1984 to 1991. (Tr. at 116.)[2] Plaintiff filed the instant claim on August 13, 2008, alleging that she became unable to work on December 31, 1991. (Tr. at 102.) The claim was denied at the initial and administrative stages. (Tr. at 71.) In denying Plaintiff's claim, the Commissioner considered cholelithiasis-gallbladder disorder and Crohn's disease with ileostomy as possible bases of disability. (*Id.*) Plaintiff requested a hearing before an administrative law judge on February 27, 2009. (Tr. at 79-80.)

On December 17, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Peter N. Dowd, who considered the application for benefits *de novo*. (Tr. at 12-22.) In a decision dated January 15, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on February 1, 2010. (Tr. at 8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 9, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On November 8, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

---

[2]Plaintiff also worked for one month in 1998 as a floral designer. (Tr. at 116.)

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective

complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

*of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 1996, and had not engaged in substantial gainful activity from the alleged onset date of December 31, 1991, through the date last insured of December 31, 1996. (Tr. at 14.) At step two, the ALJ found that Plaintiff's Crohn's disease was "severe" within the meaning of the second sequential step. (Tr. at 15-17.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18.) At step four, the ALJ found that Plaintiff could perform her past relevant work as an office or medical billing clerk. (Tr. at 21.) Alternatively, a step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 18-21.) Therefore, the ALJ found that Plaintiff was not disabled.  (Tr. at 22.)

6

### E.      Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff testified that she has Crohn's disease and underwent surgery in 1986 resulting in a permanent ileostomy. (Tr. at 36.) In 1999, Plaintiff underwent a hernia repair and revision of her ileostomy. (Tr. at 37, 260.) In 2001, Plaintiff underwent a total hysterectomy because of endometriosis. (Tr. at 54, 302.) Plaintiff believes that she was suffering from some symptoms based on the endometriosis as well as Crohn's disease during the relevant period between 1991-1996. (*Id.*)

In July 1995, Plaintiff was admitted to the hospital with a diagnosis of cholecystitis, choledocholithiasis and pancreatitis. (Tr. at 178.) Plaintiff was placed on antibiotics, a laprascopic cholecystectomy (gall bladder removal) was performed, she did well postoperatively and was released to go home. (Tr. at 179-89.)

In May 2006, an MRI of the lumbar spine showed "disc protrusion with angular tear at L4-L5" and "small disc herniation without effacement of the anterior thecal sac, at L5-S1." (Tr. at 521.)

Plaintiff's treating physician, Nedra Downing, M.D., indicated in July 2009 that pain from endometriosis "is gradual and probably had been there a while." (Tr. at 526.) Dr. Downing stated Plaintiff had "a lot of pain in the area around . . . where the stomach is and the digestive area and it would be very tender." (Tr. at 527.) "Some of that was the hernia [and s]ome of that was the Crohn's disease [and s]ome of it was spasms." (Tr. at 527.) Dr. Downing also opined that Plaintiff could not have returned to work between 1991 and 1996 because "there were times when her energy was good and she seemed to be free of major surgery but something would always happen to cause a set back." (Tr. at 527.) "Jennifer had more surgeries than anyone I can remember. These

7

surgeries were major surgeries. It would take a while to bounce back. Also, Jennifer had [a] great deal of emotional stress . . . " which exacerbated her problems. (Tr. at 527-28.)

A Physical Residual Functional Capacity ("RFC") Assessment concluded that as of December 31, 1996, Plaintiff was able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push and pull. (Tr. at 423.) The assessment also concluded that Plaintiff was frequently limited in her ability to balance and occasionally limited in all other postural areas. (Tr. at 424.) No manipulative, visual, communicative, or environmental limitations were established. (Tr. at 425-26.) Plaintiff's statements about the severity of her symptoms were viewed to be "only partially credible" in light of the medical evidence and all the things that Plaintiff was and is able to do despite the ileostomy. (Tr. at 427.) There was no treating or examining source statement with which to compare findings. (Tr. at 428.)

A Psychiatric Review Technique concluded that as of December 2008, Plaintiff did not have a medically determinable impairment. (Tr. at 430.) It was determined that, from 1991 to 1996, the evidence was insufficient to determine whether any medically determinable impairment existed. (Tr. at 444.)

Plaintiff's Daily Activity Report indicates that she is able to drive and ride in a car, shop in stores, shop by phone and by her computer, handle her own finances, read, watch television, and talk with friends on the phone. (Tr. at 141-43.) Plaintiff also testified that she achieved an Associates Degree in medical insurance billing in 2002. (Tr. at 32.) On good days, Plaintiff indicated that she is able to do housework, fix dinner, and walk the dogs, but on bad days, she does not do much of anything. (Tr. at 50.) Plaintiff stated that the situation was the same between 1991 and 1996 and while she was working part-time. (Tr. at 50-52, 57.) Plaintiff indicated that she was

able to pursue her education during that time because she could put forth her efforts when she felt good and rest when she did not feel good. (Tr. at 52.)

Plaintiff testified that she currently has a personal trainer and that she walks on a treadmill, does stretching exercises, and exercises with her trainer for about an hour approximately two days a week, but that she did not exercise like this between 1991 and 1996. (Tr. at 58.) Plaintiff was able to go to Disney World during the relevant time period. (Tr. at 58.) Plaintiff testified that doing heavy cleaning, such as moving a bed, is too hard for her now, but that during the relevant period, she "might've been able to move the bed." (Tr. at 59.)

Although there are no records to corroborate Plaintiff's testimony, she stated that she received counseling during the relevant time period for depression and that she was prescribed medication for it and "seemed to do pretty well." (Tr. at 60.) However, she recalled having to take breaks from her daily activities, such as cleaning the house, because of depression during that time period. (Tr. at 61.) Plaintiff testified that she has been in counseling since 1996, but recently stopped going because she could not afford to go anymore. (Tr. at 61-62.)

The ALJ asked Plaintiff, "[i]f you had such serious disease process in the 1980s and early 1990s, why didn't you apply for these benefits before July of 2008?" Plaintiff responded, "I guess - - I don't know if ignorance is an answer. I was not aware that I could apply. I had no physician at the time that would say to me that you should apply." (Tr. at 63-64.)

When asked by the ALJ whether she could have performed clerical work, seated with minimal lifting, in December 1996, Plaintiff responded, "Well, on a good day I might've been able to do a couple hours. But I can't be in one position for very long. I have to get up and stretch or I have to go lie down to take the pressure off my abdomen and my back." (Tr. at 64.) Plaintiff

9

further stated that the same would be true currently and that she could not work full time since 1986 when her Crohn's disease matured. (Tr. at 64-65.)

The ALJ asked the Vocation Expert ("VE") to assume a person with Plaintiff's background who could:

> maximally lift weights of 20 pounds, repetitively lift weights of 10 pounds or less. Could stand and walk six of eight hours. Could sit for six of eight hours. And could be in a potential work setting [where she] only occasionally [had to] climb stairs, balance, stoop, kneel, crouch, and crawl.

(Tr. at 67.) The VE testified that such a person could perform Plaintiff's past relevant work of medical billing clerk. (Tr. at 67.) The ALJ then asked the VE a second hypothetical assuming a person of Plaintiff's background who could:

> maximally lift weights of 10 pounds in a potential work setting, repetitively lift weights of less than ten pounds. Could stand or walk intermittently during an eight-hour workday for two of eight hours. Could sit for six of eight hours in an eight-hour workday. And could only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl.

(Tr. at 67-68.) The VE indicated that such a person could perform the work of a medical billing clerk. (Tr. at 68.) The VE further testified that the presence of an ileostomy does not even occasionally limit a person from the medical billing clerk occupation. (Tr. at 68.) When asked by Plaintiff's counsel whether unscheduled absences in excess of one day per month would preclude employment, the VE responded that it would. (Tr. at 69.) The VE also stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 66, 69.)

## F.    Analysis and Conclusions

## 1.    Legal Standards

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not

disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the DOT. *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

Alternatively, the ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 18-21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner and instead asserts that the decision is "contradicted by the evidence." (Doc. 14 at 7-8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff states that the ALJ "abused his discretion by ignoring significant evidence from the records and Dr. Downing." (Doc. 14 at 6-7.) Plaintiff also argues that denial of her claim "denied the Plaintiff her property (her benefits), liberty (causing her injury) without Due Process and without considering the Totality of the Circumstances (*Illinois v. Gates*, 462 U.S. 213 (1983)) as it is an accepted part of the Due Process Rights of individuals in petitioning their government for redress of grievances." (Doc. 14 at 6.) Plaintiff further argues that the "right to Social Security Administration benefits is incorporated under the Fifth Amendment's Due Process Clause" and the "process adopted by, in use, and abused by the Social Security Administration is contradictory to the tenets of Due Process." (Doc. 14 at 10.) Plaintiff also contends that the "Social Security Administration's denial rate at application is excessively high when you compare this to the number of appeals that are approved[;] [It] is simply a 'checklist' approval [so] Plaintiff's claim was denied without adequate review." (Doc. 14 at 6.) Plaintiff posits that the "law and established procedures need to be revised as the procedure is causing undue and unnecessary hardship on citizens." (Doc. 14 at 9.)

### a.     Weight Given to Treating Source Opinions

Plaintiff contends that the ALJ "abused his discretion by ignoring significant evidence from the records and Dr. Downing." (Doc. 14 at 6-7.) In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

13

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.  "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I note at the outset that Dr. Downing's conclusion that Plaintiff was disabled between 1991 and 1996 (Tr. at 527-28) is not entitled to any deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ's decision to not give controlling weight to Dr. Downing's underlying opinion was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

Dr. Downing's conclusion that Plaintiff was experiencing disabling pain between 1991 and 1996 is based on the notion that pain from endometriosis "is gradual and probably had been there a while." (Tr. at 526.) This speculation is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Wilson*, *supra*. The only other evidence Dr. Downing relied upon was Plaintiff's own subjective statements regarding pain and stress in her life. (Tr. at 527-28.)

14

These subjective complaints are also not well-supported. In addition, although Dr. Downing referred to Plaintiff having so many "major" surgeries between 1991 and 1996, the record evidence reveals that the only surgery Plaintiff underwent during this time period was laprascopic cholecystectomy (gall bladder removal surgery). (Tr. at 179-89.)

I therefore conclude that the ALJ properly chose not to give controlling weight to Dr. Downing's opinion.

### b.    Plaintiff's Credibility Regarding Subjective Complaints of Pain

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's

demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's findings, including the finding that Plaintiff's testimony regarding her level of pain was not fully credible. The physical RFC concluded that Plaintiff's statements about the severity of her symptoms were viewed to be "only partially credible" in light of the medical evidence and all the things that Plaintiff was and is able to do despite the ileostomy. (Tr. at 427.) I further suggest that the ALJ's findings follow the opinions of the vocational expert, which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and with Plaintiff's own statement that, during the relevant time period, she was able to drive and ride in a car, shop in stores, shop by phone and by her computer, handle her own finances, read, watch television, talk with friends on the phone, do housework, fix meals, walk the dogs, work out with a personal trainer twice weekly for about an hour, walk on a treadmill, do stretching exercises, go to Disney World, and attend college. (Tr. at 32, 50, 58-59, 141-43.)

### 3.    Plaintiff's Other Arguments

Plaintiff contends that she was denied her due process rights. (Doc. 14 at 6-10.) The Sixth Circuit has recognized a due process interest in the social security process. "The private interest involved here is [Plaintiff's] interest in a fair determination of [her] qualification (or lack thereof) for social security benefits and a meaningful opportunity to present [her] case." *Flatford v. Chater*,

16

93 F.3d 1296, 1306 (6th Cir. 1996) (holding that due process requires that a social security disability claimant have the opportunity to cross-examine a reporting physician where reasonably necessary to full development of the evidence and finding that ALJ's request for post-hearing evidence from a doctor was not an abuse of discretion and did not violate due process). "At a minimum, the Due Process Clause requires that an individual is afforded notice and an opportunity to be heard before the deprivation of a protected interest through adjudication. In the context of a social security hearing, due process requires that the proceedings be 'full and fair.'" *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010) (citations omitted).[3]

There is no allegation or evidence that Plaintiff was denied notice, an opportunity to be heard, or a full and fair hearing. Disagreement with the result of a hearing does not render the hearing violative of due process. I therefore find this argument to be without merit.

### 4.    Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

---

[3]I note that *Bivens* actions are not available for alleged improper denials of social security benefits. *Schweiker v. Chillicky*, 487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988) (improper denial of social security benefits, allegedly resulting from due process violations by petitioners in their administration of the CDR program, cannot give rise to a cause of action for money damages against the social security administration or its officers).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: April 6, 2011                          United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System, and upon the following non_ECF participant via the United States Postal Service: Jennifer Leach-Morin 504 Park Circle, Clio, MI 48420.

Date:  April 6, 2011                    By____s/Patricia T. Morris_____
                                        Law Clerk to Magistrate Judge Binder